UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| MATTHEW SPENCE | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:13-CV-157-PRC |
| | ) | |
| DAVID BUCK, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion for Summary Judgment and/or Motion to Strike [DE 26], filed by Plaintiff Matthew Spence on September 4, 2014. For the reasons set forth below, the Court grants in part and denies in part Plaintiff's motion.

**PROCEDURAL BACKGROUND**

On May 3, 2013, Plaintiff Matthew Spence filed a Complaint, alleging that, without provocation, Defendant David Buck's dog, which was confined in Defendant's pickup truck with the windows lowered, attacked and bit Plaintiff as he walked past Defendant's truck. Plaintiff alleges that Defendant was careless and negligent in failing to properly control and restrain his dog and in failing to warn Plaintiff that his dog was vicious. Plaintiff alleges that as a direct and proximate result of the Defendant's negligence Plaintiff was bitten by the dog and sustained severe and permanent injuries to his face, including permanent facial scarring and disfigurement as well as other injuries.

Defendant filed an Answer on July 29, 2013, asserting several affirmative defenses sounding in contributory negligence, including that Plaintiff was the sole proximate cause, contributory negligence, incurred risk, assumed risk, failure to avoid injury, failure to mitigate damages, and open and obvious danger, as well as affirmative defenses of "act of God," collateral source payments,

lack of control, and the statute of limitations. Defendant also asserted the right to raise additional affirmative defenses developed during the course of discovery.

Plaintiff filed the instant motion for summary judgment on September 4, 2014, seeking summary judgment on certain of Defendant's affirmative defenses. Defendant filed a response on October 16, 2014, and Plaintiff filed a reply on October 23, 2014.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).

Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

## MATERIAL FACTS

On February 25, 2012, Defendant David Buck owned an approximately six-year old male black Labrador Retriever weighing about 82 pounds named Cole and an approximately nine-year old male chocolate Labrador Retriever named Coco. Since they were puppies, both dogs often rode along in Defendant's truck. Prior to that date, Defendant had driven the dogs to the American Legion Post 400 in Fish Lake/Walkerton, Indiana, approximately 20 times, leaving them in the back seat of the cab of his pick up truck each time while he was inside the building.

That day, Plaintiff Matthew Spence drove to the American Legion Post to meet family. He backed his car into a spot to the right and across the parking lot from the entrance of the building, so that the front of his car was facing the building. Patty Kosiba, the bar tender that day, described the location of his car "as you leave the exit door, on the left, on the other side of the parking lot."

4

(Pl. Br., Ex. F, p. 14, ll. 6-7).[1] Plaintiff went into the building and discovered that his family had already left. He sat down at the bar and ordered a beer.

Approximately thirty minutes after Plaintiff sat down, Defendant arrived at the American Legion Post in his four-door pick-up truck with his two dogs, who were riding in the back seat of the cab. He parked close to the entrance of the building, with the front of the truck facing the building. From the view exiting the building, there were one to three handicapped spots to the left of his truck. Upon arriving, Defendant left the dogs in the back seat of the cab with the back windows rolled down approximately 10-12 inches for ventilation and entered the American Legion Post.

When Defendant entered the building, Plaintiff was already inside. Both Plaintiff and Defendant testified that they did not speak to each other. About ten to fifteen minutes after Defendant entered the building, Defendant saw Plaintiff leave.

Plaintiff testified that, as he was leaving the building, he received emails on his phone. As he was checking his emails, he turned to the right and started walking. He then realized that he had parked in a different direction, so he turned around in front of Defendant's truck to change direction. He then turned right to walk along the passenger side of Defendant's truck toward his car, which was parked across the parking lot. Plaintiff testified that he was approximately ten to twelve inches from the truck as he walked past. There was no car in the handicapped spot. As he was walking past the back passenger window of Defendant's truck, the black dog partially came out of the window and "grabbed his shoulder." (Pl. Br., Ex. B, p. 21, l. 4-5). Plaintiff testified that he felt the dog grab his shoulder before he saw it. He testified that there was no barking or growling in advance. He

---

[1] Neither party submitted a drawing or map of the building and parking lot.

brought his arm up and the dog bit his wrist. As Plaintiff was examining his wrist, the dog bit his lip. Plaintiff then fell to the ground.

Plaintiff testified that he did not hear any dogs barking nearby when he first exited the building, when he was in front of Defendant's truck, or after he turned to walk along next to the truck and was putting his phone away.

After he was bit, Plaintiff walked to his car where he tried to stop the bleeding. After about five minutes, he called his wife from inside the car. Then he drove himself to LaPorte Hospital. The bite wound to Plaintiff's face was repaired surgically and left permanent scarring and facial disfigurement.

Plaintiff states in his Affidavit that he did nothing to provoke the dog's attack. He states that he was "minding [his] own business and did not attempt to engage, communicate with and/or touch any of the dogs in" Defendant's truck. (Pl. Br., Ex. I, ¶ 4). He also states that he did not attempt to touch the truck. Plaintiff testified that he considers himself to be a dog person and has been around dogs his whole life. At the time of the incident, he had two seven-year old Golden Retrievers who were 75 and 100 pounds respectively.

Defendant did not see anything regarding Plaintiff after Plaintiff left the building, and Defendant did not see his dog bite Plaintiff.

Patty Kosiba was a bar tender at the American Legion Post at the time of the attack. She testified that she saw Defendant pull up into the American Legion Post's parking lot with his two dogs in the cab of his truck. At the time, the truck's windows were down about six inches. Kosiba testified that Plaintiff and Defendant were both present at the bar together during her shift. Kosiba saw Plaintiff exit the building and take a right into the parking lot by Defendant's truck. When she

6

looked again, Plaintiff had walked to his car on the other side of the parking lot. At that time, there were four other people present in the American Legion Post bar–Defendant with his girlfriend Jackie Louise and Kurtis Long with his son. Kosiba testified that she did not see Plaintiff touch the Defendant's truck or his dogs and that she did not see the dog attack Plaintiff.

Kurtis Long testified that he was at the American Legion Post at the time of the incident. Long testified that when he arrived at the American Legion Post, he saw Defendant's two dogs in the cab of the truck with the windows down. He testified that both dogs had their heads out the window and were barking at him from the time he got out of his vehicle until he entered the building, which was between 30 and 45 seconds. Long testified that the truck was parked near the entrance to the building. Long testified that he did not approach the truck. Long testified that Plaintiff and Defendant talked a little about the dogs in the truck and them barking; Long testified that he heard Defendant tell Plaintiff that the dogs were "just big babies." (Pl. Br., Ex. G, p. 7, ll. 15-18). Long testified that he saw Plaintiff walk out the door of the bar, but Long did not watch Plaintiff after he left. Long did not see Plaintiff walk near Defendant's truck, did not see Plaintiff have any contact with the dogs, and did not see the attack. After Plaintiff left, while Long was still inside the American Legion Post, the bar tender received a phone call, which prompted Long to go outside. He saw blood on the ground.

Jackie Louise, Defendant's girlfriend, accompanied Defendant to the bar that day. She testified that Defendant parked his truck near the building's entrance and that Defendant left the truck windows down about ten inches for the dogs. She testified that Plaintiff was already at the bar when she and Defendant arrived. Louise did not see Plaintiff leave the bar, did not see Plaintiff in the parking lot, did not see the dog attack Plaintiff, and did not see Plaintiff again that day. Louise

7

learned of the attack because Plaintiff's wife called the American Legion Post bar that same day. Because Defendant had already left to take the dogs for a walk when the call came in, Louise spoke with Plaintiff's wife. Louise testified that Plaintiff's wife said "that [Plaintiff] loves animals. He probably walked up to the dog to pet the animals or–and you know, got bit." (Pl. Br., Ex. H, p. 18, ll. 17-20). Louise testified that Plaintiff's wife did not seem alarmed at that point. After the call, Louise went outside and observed blood on the ground. Louise testified that she had never heard Cole growl but that he barks. She testified that he barks when she walks in the house and when she is out for a walk and is approaching their yard.

## ANALYSIS

Plaintiff moves for summary judgment on all of Defendant's affirmative defenses, arguing that, based on the designated evidence, Defendant cannot meet his burden of proving certain of the affirmative defenses alleged in his Answer. Plaintiff argues that, because the dog bite was not witnessed by anyone, Defendant cannot refute Plaintiff's testimony that he did nothing to provoke the attack. Defendant responds that there are genuine issues of material fact precluding summary judgment on the affirmative defenses at issue.

At trial, Defendant has the burden of proving his affirmative defenses by a preponderance of the evidence. *Sapp v. Flagstar Bank, FSB*, 12 N.E.3d 913, 922 (Ind. Ct. App. 2014) (citing *Lacy v. White*, 288 N.E.2d 178, 185 (Ind. Ct. App. 1972)). "An affirmative defense is a defense upon which the proponent bears the burden of proof and which, in effect, admits the essential allegations of the complaint, but asserts additional matter barring relief." *Id*. (citing *GKC Indiana Theatres, Inc. v. Elk Retail Investors, LLC*, 764 N.E.2d 647, 653 (Ind. Ct. App. 2002)).

8

"The party with the burden of proof may, in some instances, rely on inferences in the absence of direct evidence. However, those inferences must be reasonable." *Id.* (citing *Fowler v. Campbell*, 612 N.E.2d 596, 602 (Ind. Ct. App. 1993)). "An unreasonable inference yields an arbitrary or capricious result based on speculation, guess, surmise, conjecture, or mere possibility." *Fowler*, 612 N.E.2d at 602 (citing *Pucket v. McKinney*, 373 N.E.2d 909, 912 (Ind. Ct. App. 1978), *DeMichaeli & Assocs. v. Sanders*, 340 N.E.2d 796, 803 (Ind. Ct. App. 1976)).

As an initial matter, the Court notes that Plaintiff's motion seeks relief either in the form of summary judgment or the striking of affirmative defenses. However, Plaintiff offers no legal standard for striking any of the affirmative defenses. Therefore, the Court considers this motion only as one for summary judgment under Federal Rule of Civil Procedure 56. The Court considers Plaintiff's motion as to each of the affirmative defenses on which summary judgment is sought.

### A. Affirmative Defenses Regarding Allocation of Fault

In Legal Paragraphs I, II, III, IV, VIII, IX, and X, Defendant asserts affirmative defenses sounding in contributory fault, incurred risk, assumption of risk, failure to avoid injury, failure to mitigate damages, and open and obvious danger.

Indiana's Comparative Fault Act (the "Act") "governs any action based on fault that is brought to recover damages for injury or death to a person or harm to property." Ind. Code § 34-51-2-1. Under the Act, "fault" is defined as "any act or omission that is negligent, willful, wanton, reckless, or intentional toward the person or property of others. The term also includes unreasonable assumption of risk not constituting an enforceable express consent, incurred risk, and unreasonable failure to avoid an injury or to mitigate damages." *Id*. § 34-6-2-45. "In an action based on fault, any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as

9

compensatory damages for an injury attributable to the claimant's contributory fault, but does not bar recovery except as provided in section 6 of this chapter." *Id*. § 34-51-2-5. Section 6 provides that, if an action based on fault is brought against one defendant, "the claimant is barred from recovery if the claimant's contributory fault is greater than the fault of all persons whose fault proximately contributed to the claimant's damages." *Id*. § 34-51-2-6(a). When a case goes to the jury, the court instructs the jury to determine the percentage of fault of the claimant, of the defendant, and of any nonparty. *Id*. § 34-51-2-7(b).

The "apportionment of fault is uniquely a question of fact to be decided by the fact-finder." *St. Mary's Med. Ctr. of Evansville, Inc. v. Loomis*, 783 N.E.2d 274, 284-85 (Ind. Ct. App. 2002) (citing *Hampton v. Moistner*, 654 N.E.2d 1191, 1195 (Ind. Ct. App. 1995)). The point where apportionment of fault becomes an issue of law solely for the trial court "is reached only when there is no dispute in the evidence and the fact-finder is able to come to only one logical conclusion.'" *Id*.

In the instant motion, Plaintiff cites his own testimony that he did not do anything to provoke Defendant's dogs and that he was simply walking in the parking lot near Defendant's truck when the dog put its head out the window and attacked him. Plaintiff argues that Defendant has not identified any admissible evidence that raises a genuine issue of material fact that Plaintiff was at fault. As a result, Plaintiff argues that he is entitled to summary judgment on all of Defendant's affirmative defenses that in any way relate to fault allocation, including but not limited to comparative fault, contributory negligence, and incurred risk.

In response, Defendant argues that Plaintiff is seeking summary judgment based solely on his version of what occurred in the parking lot with no eye witnesses and that Plaintiff's brief suggests that apportionment of fault is a question of law, not fact. Defendant contends that genuine

disputes of material fact remain as to (1) whether Plaintiff saw or should have seen either or both of Defendant's dogs when he exited the American Legion, (2) whether Plaintiff heard or should have heard either or both of Defendant's dogs barking when he exited the American Legion, (3) whether Plaintiff was innocently walking to his car or whether he was attempting to engage Defendant's dogs.

Defendant contends that it is implausible that Plaintiff did not see the dogs in the truck when he picked his head up and realized that he was walking in the wrong direction. It was daytime, and the two 80 pound dogs were in the truck directly in front of him. Perhaps Plaintiff was distracted enough not to have noticed. In contrast to Plaintiff's testimony, when Kurt Long was in the parking lot, both dogs had their heads out the window and were barking at him. Perhaps the dogs were lying down, asleep, and were not roused by Plaintiff walking in front of the vehicle. Perhaps the dogs were up and about but not barking and Plaintiff was simply distracted. Nevertheless, drawing all reasonable inferences in favor of Defendant, there are factual issues the jury must resolve in hearing Plaintiff's testimony and weighing credibility.

Defendant similarly contends that a reasonable inference exists that the dogs were barking and that Plaintiff heard them, despite Plaintiff's testimony to the contrary. Defendant's girlfriend, Jackie Louise, testified that Cole barks when she enters the house or when she nears the yard while out on a walk. Long testified that the dogs had their heads out the window barking when he was in the parking lot and that they started barking as soon as he got out of his vehicle until he entered the building. Plaintiff testified that he did not hear the dogs barking at any time before he was attacked. Given the testimony regarding the dogs' propensity to bark and to bark in the parking lot, on this

11

motion for summary judgment, there is a reasonable inference that the dogs were barking at some point after Plaintiff exited the building. This is an issue to be weighed by the jury.

Finally, Defendant argues that there is a reasonable inference that Plaintiff engaged the dogs. Defendant notes that Plaintiff considers himself to be a dog person and owned two Golden Retrievers approximately the same size as Cole and Coco. Although Plaintiff's wife did not witness the event and did not state that Plaintiff told her that he engaged the dogs, Plaintiff's wife nevertheless told Defendant's girlfriend that Plaintiff probably approached the dogs to pet them. Plaintiff does not acknowledge this fact in his briefing. Although both Defendant and Plaintiff testified that they did not talk to each other, Kurtis Long testified that he heard Plaintiff and Defendant in the bar that day discussing Cole and Coco's barking. Plaintiff also does not acknowledge this testimony in his briefing. Plaintiff was walking 10 to 12 inches from the truck. All of this evidence raises material questions of fact regarding the events that afternoon.

In this motion, Plaintiff relies heavily on the fact that there were no eye witnesses who saw what happened when Plaintiff approached Defendant's truck and that Defendant has no direct evidence to refute Plaintiffs version. But Defendant is not required to have direct evidence to argue that reasonable inferences can be drawn from Plaintiff's testimony and other evidence of record; nor does Plaintiff's version, which is based solely on his own testimony, have to be believed by the jury. On this motion for summary judgment, the Court must view the facts in the light most favorable to Defendant, and the Court does not weigh credibility. And given Plaintiff's testimony that he first walked in front of Defendant's truck, which was the wrong direction, that he did not hear or see the dogs in Defendant's truck, and that he walked within ten to twelve inches of Defendant's truck that had the windows down, the Court cannot say that there is only one logical conclusion regarding the

12

dog bites that occurred on February 25, 2012, outside the American Legion Post. Thus, because multiple reasonable inferences exist, summary judgment is not appropriate, and the question of comparative fault is a matter for the jury to decide after hearing the evidence and assessing the credibility of the witnesses. *See Burton v. Bridwell*, 938 N.E.2d 1, 6-7 (Ind. Ct. App. 2010) (finding that the question of apportionment of fault was a question of law for the court because the factfinder was able to come to only one logical conclusion *because the evidence at trial* "completely failed to establish any proper basis" for finding that the plaintiff driver was negligent and, thus, holding that it was improper for the jury to have apportioned any fault to the driver's passenger in failing to warn the driver of the defendant's approaching vehicle).

As a final matter, Defendant argues that there is a genuine issue of material fact as to whether his dog had any vicious propensity such that Defendant should have been on notice and acted accordingly. However, because Plaintiff did not seek summary judgment on this issue, it is not properly before the Court.

### B. Statute of Limitations

Legal Paragraph XI of the Affirmative Defenses alleges that Plaintiff's claim is barred by the applicable statute of limitations. The applicable statute of limitations for this personal injury action is two years. Ind. Code § 34-1-2-4(a). It is undisputed that the dog bite underlying this cause of action occurred on February 25, 2012, and that this lawsuit was filed on May 3, 2013. Defendant offers no response to Plaintiff's motion as to this affirmative defense. Because the cause of action was filed within the two year statute of limitations, there is no genuine issue of material fact as to the timeliness of the Complaint. The Court grants summary judgment in favor of Plaintiff on Defendant's Affirmative Defense in Legal Paragraph XI based on the statute of limitations.

### C. "Act of God" Affirmative Defense

Legal Paragraph V of the Affirmative Defenses provides that "[a]ny injury or damage sustained by Plaintiff was the result solely of an act of God." Indiana Courts define an "act of God" as

> the manifestation of a superhuman power which breaks the chain of causation in the realm of human activity. It upsets the best-laid plans of men and spoils all their calculations. Because its coming is beyond the scope of man's prevision and its power beyond his strength, he is not liable for the consequence thereof . . . .

*Childs v. Rayburn*, 346 N.E.2d 655, 658 (Ind. Ct. App. 1976) (citing *Chi. and Erie Ry. Co. v. Schaff Bros. Co.*, 117 N.E. 869, 870 (Ind. App. 1917)). Plaintiff moves for summary judgment on this affirmative defense, arguing that a dog in a truck is not an "act of god." Defendant offers no response to this argument. Defendant has offered no evidence to create a genuine issue of material fact that an "act of God" was a proximate cause of Plaintiff's injury. The Court grants summary judgment in favor of Plaintiff on Defendant's Affirmative Defense in Legal Paragraph V. In a separate argument, Plaintiff contends that Defendant has pleaded "accident" as an affirmative defense. However, the phrase "accident" is contained within the "act of God" affirmative defense in Legal Paragraph V and, thus, is covered by this ruling.

### D. Right to Raise Additional Affirmative Defenses

In Legal Paragraph XIII of the Affirmative Defenses, Defendant reserves the right to "raise additional affirmative defenses that may be developed through the course of discovery in this litigation." Plaintiff argues that discovery is closed and the deadline to amend pleadings has passed. Defendant did not respond to this argument. Federal Rule of Civil Procedure 15 allows a party to amend its pleadings before and after trial; however, leave of court is required to do so. Thus, summary judgment is not appropriate on this affirmative defense. Rather, the law requires Defendant

14

to seek leave of Court to add any additional affirmative defense in accordance with Rule 15. *See Reis Robotics USA, Inc. v. Concept Indus., Inc.*, 462 F. Supp. 2d 897, 907 (N.D. Ill. 2006). The Court denies the motion as to Legal Paragraph XIII.

### E. "No Control" Affirmative Defense

Legal Paragraph VII of the Affirmative Defenses provides that Plaintiff's "injuries and damages if any were caused by others whom the Defendant did not control or had no right to control." Plaintiff argues that there is no evidence of the involvement of any other party. Plaintiff was bitten by Defendant's dog, and the dog was in Defendant's truck at the time. Defendant does not respond to this argument, and Defendant has not designated any evidence raising a genuine issue of material fact that any other party was involved in the incident. Accordingly, the Court grants summary judgment in favor of Plaintiff on the Affirmative Defense in Legal Paragraph VII.

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS in part and DENIES in part** Plaintiff's Motion for Summary Judgment and/or Motion to Strike [DE 26], granting summary judgment in favor of Plaintiff and against Defendant solely on Defendant's Affirmative Defenses raised in paragraphs V, VII, and XI. The Court **REAFFIRMS** the December 19, 2014 final pretrial conference and the January 20, 2015 jury trial setting.

So ORDERED this 6th day of November, 2014.

                                                s/ Paul R. Cherry
                                                MAGISTRATE JUDGE PAUL R. CHERRY
                                                UNITED STATES DISTRICT COURT

cc:    All counsel of record